**In the Matter of M.S. WIEN & CO., INC., Debtor.**

**SECURITIES & EXCHANGE COMMISSION, Plaintiff,**

**v.**

**M.S. WIEN & CO., INC., Defendant.**

**Bankruptcy No. 81–0889.**

United States Bankruptcy Court, D. New Jersey.

Feb. 15, 1985.

Frank Vecchione, Crummy, DelDeo, Griffinger & Vecchione, Newark, N.J., Trustee.

Michael Claiborne, pro se.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

The trustee of M.S. Wien & Co., Inc. (Wien) moves to disallow the claim of Michael R. Claiborne as a preferred "customer claim", pursuant to the Securities Investor Protection Act. The trustee's principal contention is that the claim is correctly classified as a general claim against Wien's estate.

The facts herein are generally undisputed. Claiborne was employed by Wien as manager of Wien's Dallas branch office. Claiborne's agreed upon compensation included commissions based on brokered sales generated by the Dallas office. Claiborne, maintaining his own individual account with Wien, directed payment of his commissions into that account. Despite repeated requests to do so, the administrative staff of Wien never complied. The commissions were never deposited into Claiborne's account, nor did he receive payment in any other manner. According to Claiborne, the amount due him totals $23,495.83.

Appearing *pro se* before this court, Claiborne asserts that, since the monies in question should have been paid into his brokerage account, his claim is a "customer claim" and is, therefore, entitled to the preferential status of such claims under the Securities Investor Protection Act. The trustee, to the contrary, contends Claiborne's claim is a general creditor claim, not a "customer claim".

In 1970 Congress passed the Securities Investor Protection Act (SIPA), a body of law designed to facilitate the orderly liquidation of insolvent brokerage firms. 15 U.S.C. § 78aaa *et. seq.* Incorporated therein were provisions providing for the preferential treatment of the claims of customers of such liquidating brokers. *Id.* In establishing such protection, Congress found it necessary to promulgate definitions of "customers" and their protected property.

> The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities, . . . .

15 U.S.C. § 78LLL[2].

> The term "customer property" means cash and securities (except customer name securities delivered to the customer) at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, . . . .

15 U.S.C. § 78LLL[4].

Since the enactment of SIPA, a body of case law has evolved delineating the bound-aries of these definitions. Much of this case law originated in the Southern District of New York. In the case, *S.E.C. v. Howard Lawrence & Co.*, 4 C.B.C. 1, 6 (Bankr. S.D.N.Y.1975), wherein the "customers" made claims on the basis of a broker/debtor's noncompliance with orders to sell the shares in question, the late Judge Galgay opined in dicta:

> The SIPA does not protect customer claims based on fraud or breach of contract. The Act is designed to remedy situations where the loss arises directly from the insolvency of the broker-dealer. Customers are protected from funds or securities lost as a result of the liquidation of the broker. It does not apply to the case where the loss arises from a breach of contract. The failure to comply with a sell order does not result from the insolvency, but rather gives rise to a cause of action for breach of contract. *SEC v. S.J. Salmon & Co., Inc.*, [375 F.Supp. 867] 1974 Fed. Sec L Reg. 94 582 (S.D.N.Y.) in Bankruptcy Court 72 Civ. 560 (10/15/74). This breach of contract action if successful would place claimants in the position of general creditors.

*Also see S.E.C. v. S.J. Salmon & Co., Inc.*, 375 F.Supp. 867 (S.D.N.Y.1974).

Similar results were obtained in companion cases arising from the liquidation of another broker/debtor, *In re Weis Securities, Inc.*, [1976–1977 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 95,678 (Bankr.S.D.N.Y. July 29, 1976); *In re Weis Securities, Inc.*, [1976–1977 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 95,681 (Bankr.S.D.N.Y. Aug. 2, 1976), wherein Judge Babitt ruled that the nonpayment of commissions to claimant was a simple breach of contract action, not a "customer claim". In general terms, Judge Babitt ruled that SIPA does not provide for the satisfaction of customers" claims arising out of debtor's negligent conduct; that a claim grounded upon a broker/debtor's failure to carry out a customer's orders was a general creditors' claim, not a customer claim. *Id.*

In *S.E.C. v. JHT Investors, Inc.*, [1979 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,729 (Bankr.S.D.N.Y. Feb. 9, 1978), pre-

siding Judge Ryan, in considering claims of the same character as those before this Court, ruled that such claims should be pursued against the general estate of the broker/debtor as actions for breach of contract or possibly tort claims. Clearly, the prevailing judicial interpretation of SIPA is that it "was not designed to provide full protection to all victims of a brokerage house collapse. Its purpose was to extend relief to certain classes of customers." *S.E.C. v. Packer, Wilbur & Co., Inc.*, 498 F.2d 978, 983 (2d Cir.1974). *Accord S.I. P.A. v. Wise (In re Stalvey & Associates, Inc.)*, 750 F.2d 464 (5th Cir.1985).

Upon applying the above noted decisional law to the facts herein, this Court rules that the claim of Michael R. Claiborne is not a "customer claim" within the purview of the SIPA and, therefore, is accorded the status of a general creditor's claim against the broker/debtor's general estate.

Submit an order in accordance with the above.